# CASES DETERMINED

## *January Term, 1899.*

---

ESTATE OF COLE: MULBERGER, Respondent, vs. BEURHAUS and others, Executors, Appellants.

*January 11 — January 31, 1899.*

(1–3) *Municipal corporations: Refusal of officers to enforce rights: Action by taxpayer: Appeal from county court.* (4–6) *Trusts and trustees: Repairs and permanent improvements on realty: Payment from income: Costs.*

1. When the officers of a public corporation, upon whom the duty devolves of appealing to the courts to protect its rights, refuse to put the necessary judicial machinery in motion upon demand being made therefor by a taxpaying member of such corporation acting for himself and all other such persons, or the circumstances are such as to obviously render such demand useless, such taxpayer may, so acting, take the place of such public officers for the purpose of enforcing the corporate rights.

2. If a public corporation be aggrieved by a determination of a county court as to a matter pending before it, and the proper officers of such corporation refuse or neglect to appeal from such determination to the circuit court for relief, a taxpaying member of such corporation, acting as before indicated, may intervene and take the appeal.

3. The test of the right of appeal in the circumstances stated above is not whether the taxpayer is directly injured by the determination of the county court, but whether the corporation as a whole is injured or aggrieved in a matter in which the individual members of the corporation have a substantial interest.

4. If property consisting of real estate be by will conveyed to trustees to hold for the life of certain persons in being therein named, the

VOL. 102 — 1

Estate of Cole: Mulberger vs. Beurhaus and others.

income therefrom to be used so far as necessary to keep the property in repair and to pay the taxes and insurance, and the balance to be paid to those having the life interest during the continuation of their lives, and the corpus of the property to be, at the termination of the life interest, conveyed to a municipal corporation for purposes for which it may legally hold and devote it, and there be ample income from such property to preserve it for the ultimate purpose named in the will, and there be no express power in the will for the trustees to make permanent repairs or improvements on the property out of the corpus thereof, only the income can be devoted to that purpose.

5. In the circumstances mentioned in the foregoing, the trustees of the trust, even with the consent of those having the life interest and the municipality entitled to the property ultimately, have no right to devote any part of the principal of the trust estate to the making of betterments or permanent improvements.

6. In an action to enforce a trust, or concerning its administration, the subject of costs is regulated wholly by statute. All costs and counsel fees as well, for which the trustees would otherwise be liable, are chargeable to the trust property or income thereof, in the absence of some direction to the contrary based on bad faith on the part of the trustees. The court has no authority, independent of a statute on the subject, to direct the payment of costs or counsel fees out of the trust fund, except such taxable costs as the trustees would otherwise be compelled to pay personally.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Jefferson county: JOHN R. BENNETT, Circuit Judge. *Affirmed.*

John W. Cole died testate February 17, 1894. By his will he bequeathed to three executors named the bulk of his property in trust, to manage and control the same during the life of his wife, Eliza Cole, and son, *Oscar A. Cole*, to keep all the buildings insured and in a proper state of repair, to collect all rents and other revenues of the estate, to disburse the same by paying for all repairs, insurance, taxes, and expenses of administering the trust, and by paying the residue to the wife and son in certain proportions indicated during the lifetime of both, and the whole to the survivor during his or her life; and at the death of the wife and son

the entire trust estate received by the trustees under the will was directed to be conveyed to the city of Watertown in trust for the establishment and maintenance of a public library and business men's club room, and a home for aged and poor people of the city. One of the executors named refused to serve, and one died in the lifetime of the testator. Such proceedings were had that the defendants were duly appointed as trustees and executors, and prior to October 28, 1897, they duly completed the settlement of the estate as to the usual probate proceedings.

Before the testator died he commenced making some repairs and changes of some business buildings covered by the bequests, which repairs were continued to completion, and other repairs and changes in the property bequeathed were made by the trustees, which, in effect, modernized two of such buildings by putting in new fronts and otherwise making them more desirable as rentable property. A barn was also reconstructed, and some expenditures were made on a farm by way of making a well and erecting a windmill. On the 10th day of June, 1897, a detailed statement of receipts and disbursements made on account of the property was filed, whereby it appeared that several thousand dollars of income had been received in excess of the amount paid out for repairs and improvements. All such repairs and improvements were charged against the income, and also $2,164.97 paid to the wife and son, and there was yet left in the hands of the trustees a balance of $1,084.48. Subsequent to the filing of such statement the trustees represented to the common council of the city of Watertown that they were entitled to be reimbursed out of the estate for expenditures charged against the income for improvements on the property and other expenditures. The result was that an agreement was made between such trustees and the city council, to the effect that a portion of the trust estate known as the homestead should be sold, and the proceeds used to reimburse the for-

mer for money paid out by them for funeral expenses, debts and taxes due at the death of the testator, and for permanent improvements made, or that might be made, on the property. Such proceedings were thereafter had that the homestead was sold under an order of the county court, the proceeds to be applied according to the subsequent order of the court.

Thereafter on the 28th day of October, 1897, defendants made a final report as executors, of the expenses incurred in the settlement of the estate, showing a balance of $1,791.21 due them. They also filed a detailed statement of what they called "permanent improvements" on the real estate, as follows: On the Cole Block, $1,225.99; on the homestead, $146.58; on the Harvey Block, $2,184.98; on the barn, $316.02; on the farm, $205.50,— the same being identical with the expenditures paid out of the income according to the statements filed in June. They also filed a statement of expenses of the sale of the homestead, amounting to $35, the entire account aggregating $4,114.07. Against that they credited the receipts from the sale of the homestead, leaving a balance due them of $114.07. A hearing was had on the accounts as so made up, at which a citizen and taxpayer of the city, the respondent herein, on behalf of himself and all others similarly interested, filed objections upon the ground that no authority existed for the making of permanent improvements on the trust property, and that none of the items in either of the accounts were for such improvements, and that no part of the proceeds of the homestead could properly be applied in payment of either the executors' account for the settlement of the estate, or for the so-called improvements upon the property. A hearing was had on such objections with the result that the court, by order, determined that the account for the amount due the executors, of $1,791.21, was payable out of the property of the testator not disposed of by his will; that no part of the proceeds of the homestead could be used to reimburse the executors

for expenditures upon the trust property in excess of such as constituted permanent improvements strictly so called; that it was impossible to determine the amount expended for such improvements with exactness, but that there should be allowed on that account the $316.02 paid out on the barn, $940.32 on the two business blocks, and $35 for expenses of making the sale of the homestead, in all $1,291.34.

The objecting taxpayer, respondent herein, in the capacity in which he filed his objections, appealed from the determination of the county court to the circuit court. In the circuit court the trustees moved for a dismissal of the appeal upon the ground that the appellant had no appealable interest. The motion was denied.

The result of the hearing on appeal was a judgment that the agreement between the city of Watertown and the defendants for a sale of the homestead and reimbursement of the trustees out of the proceeds for money laid out and expended by them on the trust property, was void, and that the whole of such proceeds, $4,000, belonged to the trust estate to be invested for the benefit of Mrs. Cole and her son *Oscar* during their lives, and thereafter to be paid over to the city of Watertown in trust for the purposes mentioned in the will of John W. Cole. From that judgment defendants appealed.

*L. B. Caswell* and *W. H. Rogers*, for the appellants, contended, *inter alia*, that the circuit court should have dismissed the appeal for the reason that *Mulberger*, the appellant from the county court, had no interest in the subject matter determined and was not a party aggrieved. R. S. 1878, sec. 4031; *Amory v. Amory*, 26 Wis. 152; *Strong v. Winslow*, 3 Pin. 27; *Gunn v. Green*, 14 Wis. 316; *Downer v. Howard*, 47 id. 476; *Marx v. Rowlands*, 59 id. 110; *Estate of Cook*, 99 Mich. 63. To enable a party to appeal he must have an absolute pecuniary interest in the matter in controversy. *McFarland v. Pierce*, 151 Ind. 546; *Labar v. Nichols*, 23 Mich.

310; *Estate of Cook*, 99 id. 63; *Briard v. Goodale*, 86 Me. 100; *Deering v. Adams*, 34 id. 41; *In re Estate of Hardy*, 35 Minn. 193; *Swan v. Picquet*, 3 Pick. 443; *Richardson v. Richardson*, 2 Root, 219; *Kelly v. Israel*, 11 Paige, 147; *State ex rel. Agusti v. Houston*, 30 La. Ann. 1175; *State ex rel. Belden v. Markey*, 21 id. 743; *Raleigh v. Rogers*, 25 N. J. Eq. 506; *Swackhamer v. Kline's Adm'r*, id. 503. The testator attempted to make the city a trustee for certain charitable purposes, and a mere taxpayer in the city cannot have any pecuniary interest in the trust, or be an aggrieved person within the meaning of the statute. Unless *Mulberger* can show he has a special pecuniary interest or would sustain loss resulting from the order of the county court, not in common with the others, he has no standing in court and cannot appeal from the order. *Bell v. Platteville*, 71 Wis. 147; *Gilkey v. Merrill*, 67 id. 459; 2 Dillon, Mun. Corp. § 574; *Burbank v. Burbank*, 152 Mass. 254. See, also, 1 Am. & Eng. Ency. of Law, 450; *Downer v. Howard*, 47 Wis. 476; *Judd v. Fox Lake*, 28 id. 583; *Doolittle v. Broome Co.* 18 N. Y. 155; *Hale v. Cushman*, 6 Met. 425. The donation is not to the city of Watertown so as to affect taxation. It is to the city in trust for certain objects. *McHugh v. McCole*, 97 Wis. 166, 182; *Rhymer's Appeal*, 93 Pa. St. 142–145. The right of a taxpayer to appear in court against a common injury is similar to a proceeding to abate a common nuisance. It must appear that the plaintiff sustains damage peculiar to himself and not in common with his fellows. Otherwise the action must be prosecuted by the attorney general. *Bigelow v. Hartford B. Co.* 14 Conn. 565, 577; *Zettel v. West Bend*, 79 Wis. 316; *Kuehn v. Milwaukee*, 83 id. 583.

*Harlow Pease*, for the respondent.

MARSHALL, J. Appellants contend that respondent had no right to take the appeal from the county court to the circuit court, and that the latter erred in not dismissing it on

appellants' motion.   The statute (sec. 4031, R. S. 1878) is referred to, giving the right of appeal in such cases only to the party aggrieved, and numerous cases are cited to the effect that only a person having a substantial or pecuniary interest in the matter is a party aggrieved within the meaning of the statute.  It is unnecessary to discuss that question at any considerable length.   It is sufficient to refer to the reasoning in many cases recently decided by this court as to the right of a taxpayer to enforce the cause of action of a public corporation of which he is a member when its officers neglect or refuse to perform their duty.   *Quaw v. Paff*, 98 Wis. 586; *Frederick v. Douglas Co.* 96 Wis. 411; *Land, L. & L. Co. v. McIntyre*, 100 Wis. 245, 258; *Rice v. Milwaukee*, 100 Wis. 516; *Webster v. Douglas Co. post*, p. 181.

The direct injury to be remedied where the taxpayer intervenes and sets the judicial machinery in motion for that purpose, is not personal and direct to himself, but to the corporation.  The question is, Are the members of the corporation as a whole aggrieved?   If so, rather than that justice shall fail, the court will take jurisdiction of the subject of controversy at the instance of a taxpayer.   The fact that the threatened injury or the wrong done is to the corporation, and that its governing body or officers, who should move in the matter, neglect or refuse to do so, creates a necessity for some other way to remedy the mischief, and in that situation the circumstance of a person being a taxpayer and interested in the protection of its rights is a sufficient test of his competency to challenge the threatened wrong, or wrong actually done, in a court of justice.  That jurisdiction of the court is the most powerful and effective force to prevent and redress wrongs to public corporations when their officers squander public money or improperly surrender or violate public rights, either corruptly or ignorantly.   There is no other way to successfully and efficiently meet that situation.   In such cases, where officers neglect to do

their duty, the wrong need not by any means go unredressed so long as there is a single taxpayer with courage and public spirit enough to set the judicial machinery in motion.    He may stand in court in place of the unfaithful public officials. The court, in him, will recognize the interests of the corporation as a whole, and, with the evidence produced before it calling for action, by its decree compel the performance of duty by all within its reach.

No man or set of men can wrong a public corporation in Wisconsin and defy its members, by means of sustaining such relations with the individuals of its governing body as to deter them from properly protecting the public rights, or their failing to do it from any other cause.    Such has been found to be the situation in some states at some times, as indicated in *Land, L. & L. Co. v. McIntyre, supra,* but not here. The subject is not governed by any statute, or necessarily by precedent.    As said in the case cited, the power of a court of equity, which is the jurisdiction invoked by the taxpayer, is broad enough to fit all situations where, to effect justice, a remedy is required.    While it is guided by precedents, it is not governed by them, but may meet new situations as they arise, so that, in the race between it and wrong doing by public servants in the handling of the financial affairs of the municipality, the way is open and the means ample to secure the prevalence of justice over wrong.

It will not be questioned but that the city of Watertown could have appealed from the action of the county court. That being the case, the taxpayer, within all the decisions of this court, had a sufficient interest in maintaining the corporate rights to enable him to intervene and take the appeal when the corporation would not proceed in the proper way to protect its rights.

The remaining question to be determined is, Did the trial court rightly decide that the entire expenditures made by the trustees upon the trust property were chargeable to the

income therefrom? That must be answered in the affirm-
ative, and independently of whether the decision was strictly
right as to the expenditures being all for repairs strictly so
called or not. As to that, however, we see no reason for
disturbing the decision of the trial court. The will clearly
indicates that the entire estate received from the testator
was intended by him ultimately to be conveyed to the city
of Watertown for the purposes indicated therein. It devoted
the income to the payment of all repairs on the buildings,
and said that all of the property which came to the posses-
sion of the trustees shall at the end be conveyed to the city.
There is no special power given to do anything to the build-
ings except to keep them in repair. As a general rule, un-
less such special power be expressly given to trustees, they
cannot exercise it at all. Perry, Trusts, § 526; Lewin,
Trusts, *576; Beach, Trusts, § 626, and cases cited to text
in each. Beach states the rule thus: "Subject to certain
modifications it is the rule that where real estate is conveyed
to trustees in trust for a tenant for life, with remainder over,
the trustees have no power to raise money out of the *corpus*
of the estate for the purpose of making substantial and per-
manent repairs, either on the buildings or on the land.
Such expenses, if incurred, will be a charge on the interest
of the tenant for life." *Nairn v. Marjoribanks*, 3 Russ. 582,
is instanced to support the text, where Lord ELDON said
that, even if the master should report that it would be for
the benefit of all parties interested that improvements should
be made, he would not confirm the report.

Some exceptions to the extreme rule stated are found in
some modern decisions, in cases where the control of the
property given to the trustees was of such a nature as to in-
clude by implication power to incur expenses for permanent
improvements, or where it was necessary to make such im-
provements in order to preserve the property and make it
tenantable, and there was no other way of raising the nec-

essary money to do it; but no case can be found sanctioning improvements to property at the expense of the remainderman where power to do so is not given by the instrument creating the trust, either expressly or impliedly, or where the income from the property is ample to meet all such expenditures. In *Peirce v. Burroughs*, 58 N. H. 302, the general rule is stated thus: "The preservation of the capital without expense to the remainderman is as much his right, as the use of the property without payment of rent is the right of the tenant for life; the measure of the latter is the net income for life." *Cogswell v. Cogswell*, 2 Edw. Ch. 231, is a further good illustration of the rigorous adherence to that rule by courts of equity. There a portion of the trust property consisted of buildings in such a condition as to yield but very little income, and the court said that did not justify the making of permanent improvements at the expense of the trust property, the testator having given no directions in that regard in his will. That applies very clearly to the will before us. The testator indicated clearly, as before stated, that the buildings on the property were to be put in repair, and kept in repair, out of the income till the expiration of the life interest of the wife and son, and then that the property, unimpaired as it came to the trustees, except as to character of investments changed under the terms of the will not material to this discussion, should be conveyed to the city of Watertown. There is no power in the trustees to change the plain scheme of the will, no power in the court to authorize any such change, and no power in the city of Watertown to vary it in any manner. As the testator's scheme was worked out and inscribed in the will, so must it be. The trustees must carry out that to the letter, and at the end the city of Watertown must take the estate for the purposes indicated in the will, or reject it.

It follows, as the learned trial court decided, that the agreement made by the council of the city of Watertown for the

reimbursement of the trustees out of the trust estate for expenditures made by them upon the property, was *ultra vires* and totally so, and, as said before, without regard to whether such expenditures were in part for permanent improvements, strictly so called, though we are inclined to say, as did the trial court, that they were all repairs within the language of the will expressly directing the application of the income of the property, so far as necessary, to the payment of all expenditures necessary to keep such buildings in a proper state of repair. That certainly includes all reasonable charges necessary to make the structures desirable as rentable property.

There is no other question that requires consideration. Some suggestion was made on the argument as to the right of the parties to have costs and counsel fees out of the estate, and as to directions for the court below to make a proper allowance for such counsel fees. It is considered that the subject of taxable costs, strictly so called, in a case like this, is wholly regulated by statute. The court below has discretionary power to allow or withhold costs as justice seems to require. If allowed against the trustees they are payable out of the trust fund unless the court otherwise directs because of bad faith on the part of such trustees. R. S. 1878, sec. 2932. That applies to all courts and to the reasonable counsel fees of the trustees as well as taxable costs, the latter meaning costs taxed according to the statutory fee bill. In this connection, as to the appeal to this court, we are unable to say that the appellant trustees have been guilty of such bad faith as should subject them, personally, to the expenses of such appeal. Their costs and expenses here, therefore, will be paid from the trust fund, but from that part represented by the income. Whether their expenses, including counsel fees of the litigation below, shall be likewise paid, is a matter that will be left to the court that shall further superintend the administration of the trust.

In regard to granting counsel fees to the respondent, or giving directions to the lower court to do so, payable out of the trust fund, that is quite another question. There is no statute authorizing such a proceeding and no precedent for it in this court. The counsel fees of trustees, acting in good faith, and costs taxed against them as well, were always payable out of the trust fund, because of the injustice of making them bear the expense, personally, of matters done honestly, in a representative capacity. But it is considered that counsel fees to others that may be interested in the trust fund are not recoverable, either from the trustees personally or out of such fund. That was the rule in chancery before the Code, and there is no statute changing it, nor any precedent varying the old practice. *Rose v. Rose B. Asso.* 28 N. Y. 184; *Downing v. Marshall,* 37 N. Y. 380; *Devin v. Patchin,* 26 N. Y. 441; *Lee v. Lee,* 39 Barb. 172; Parsons, Costs, 132. There are cases in this court for the construction of wills, and contests as to the validity of wills, where a different rule has been adopted, which we need not review here. It does not apply to this case.

An examination of respondent's brief satisfies us that there is much unnecessary matter in it. Costs for that we limit to $35.

*By the Court.*— The judgment of the circuit court is affirmed, costs to be taxed and paid as indicated.

BARDEEN, J., took no part.