ALLEN, Appellant, vs. CITY OF MILWAUKEE and others, Respondents.

*February 24—June 21, 1906.*

*Municipal corporations: Street improvements: Patented pavement: Competitive bids: Milwaukee city charter: Void contract: Rights of abutting owners: Temporary injunction: Foreign corporations: Contracts.*

1. Under a city charter giving power to impose, by special assessment, upon abutting lots the cost of a street improvement only upon competitive bids, the city has no power to adopt a patented pavement so controlled by a monopoly that there can be no competition, in the fair and reasonable meaning of the word.

2. Sec. 23, ch. V, of the Milwaukee city charter (giving the board of public works power, under the authority of the common council, to make contracts for the use of any patent or patented article or process at a stipulated sum or royalty, and thereupon to order any work, whether chargeable to the city or to lots, to be done with such patented article or process) requires the approval of the council for the acquirement of the right to use patented articles or processes, and that the subject shall have been so submitted for consideration by the council that there can be no reasonable doubt that the council has consciously and intentionally given the authority.

3. Said charter provision does not dispense with competitive bidding as an essential of the scheme for paving streets at the expense of abutting lots. It contemplates the acquisition of a right to operate under the patent for a royalty and then the letting of the actual work to the lowest bidder.

4. The patentee of a certain pavement filed with the board of public works of Milwaukee a proposal to the effect that any one contracting with the city to improve streets with said patented pavement should have the right to lay the same upon paying the patentee a certain sum per square yard, for which sum the patentee was not only to grant the right to use the patents, but was to prepare and furnish a large part of the material for the pavement, as well as an expert adviser. The common council directed the improvement of a street with such a pavement,. and the assessment of a part of the cost upon abutting lots. A contract was let accordingly, the contractor being required to hold the city harmless against all claims or fees for any patented article used on the work. The sum to be paid the patentee under its proposal was about two thirds of the contract price for the pavement. *Held*, that no contract such as is authorized by sec. 23, ch. V, of the charter had been made with the patentee, and hence that there was no power to contract for work involving the use of the patent.

5. Where a contract for the improvement of a street was void and the invalidity was of a character likely to prejudice the owners of abutting lots in a manner and degree not readily separable from the burdens which might lawfully be imposed upon them, such a lotowner, who commenced his action promptly and before any work had been done, was entitled to a temporary injunction restraining payments on the contract or issuance of assessment certificates.

6. A taxpayer has the right to restrain the payment by city officers of money which the city does not owe.

7. Sec. 1770*b*, Stats. 1898, providing that contracts of a foreign corporation which has not complied with the requirements of that section "shall be wholly void on its behalf," is to be enforced according to its words. So *held* as to a contract made two days before compliance with the statute.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

Appeal from an order dissolving a temporary injunction. Plaintiff, a taxpayer and owner of real estate fronting on Jackson street in *Milwaukee,* brought action against the city, the members of the board of public works, and the contractor to enjoin the payment of any money by the city or the issue of any special assessment certificates or improvement bonds for grading and paving part of Jackson street under a contract with *The Central Bitulithic Paving Company.* It appeared that the board of public works reported to the common council that it was necessary to pave said street with "a permanent bitulithic pavement having a concrete foundation," and recommended proceeding to that end. The common council passed a resolution to subgrade and pave "with a permanent bitulithic pavement having concrete foundation," and provided for assessment of part of the cost thereof upon abutting lots and payment of the balance by orders on the city treasury. After such resolution the board of public works prepared specifications calling for, first, a six-inch concrete foundation; second, a two-inch wearing surface of finer stone mixed, according to minute specification, with "Warren's Brand Nos. 19 to 24 Bituminous Water Proof Cement or Bitulithic Cement;" third, a separate finish of "Warren's Quick Drying Bituminous Flush Coat Composition;" and, fourth, a layer of stone chips rolled into the last; as also the two preparations. A pavement so constructed and involving, with the concrete, the use of these special preparations together with the method and manner of laying it, is fully covered and controlled by patents be-

longing to a corporation known as Warren Bros. Company. The names of the two compositions above quoted and the word "bitulithic" are tradenames registered under federal copyright laws. The specifications required that the contractor should protect and hold the city harmless against any and all claims or fees for any patented article or arrangement that might be used in connection with the work. It is alleged that Warren Bros. Company have organized some four subsidiary companies to whom it has conveyed the privilege of using its patents and laying pavement covered by the same, among which is the defendant contractor. Further, it appears that Warren Bros. Company had filed with the board of public works a proposal substantially to the effect that any one to whom contract for the paving might be awarded for improving the streets with "Warren's bitulithic pavement" should have the right to lay the same by paying Warren Bros. Company $1.40 per square yard for finished pavement, for which the latter agreed to mix and supply at Milwaukee the two-inch wearing surface; the flush coating cement and stone chips for flushing the wearing surface; and also to furnish an expert to give proper advice in course of the work; also to grant right to use all patents necessary to the work. The defendant contractor, a foreign corporation, had not complied with sec. 1770b, Stats. 1898, at the time of bidding or execution of the contract or final approval thereof by the comptroller, but did so comply two days after such last act and before suit was commenced. No work had been done under the contract at the time of commencement of suit. The contract provided for a price of $2.25 per yard for paving. Temporary injunction was issued ex parte and, after answer by all the defendants, same was dissolved on the ground, as stated by the circuit court, that it "has not sufficient doubt as to the regularity and integrity of the proceedings of the common council and board of public works to warrant it in continuing the injunction." Also, that the

compliance with sec. 1770b, Stats. 1898, was sufficient. As a condition of dissolution, bonds were required, one to the city to protect it, and one to the plaintiff to protect him from "any damages sustained by reason of the dissolution of the injunction." Plaintiff appeals from such order.

For the appellant there were briefs by *Ryan, Ogden & Bottum*, and oral argument by *L. M. Ogden*.

*Carl Runge*, city attorney, for the respondent *City of Milwaukee* and all other respondents except *The Central Bitulithic Paving Company*.

*Arthur Jones*, counsel for *The Central Bitulithic Paving Company*.

The following opinion was filed March 20, 1906:

DODGE, J. In *Dean v. Charlton*, 23 Wis. 590, this court decided that under charters which give power to the city to impose, by special assessment, upon abutting lots the cost of a street improvement only upon competitive bids, cities have no power to adopt a patented pavement so controlled by a monopoly that there can be no competition, in the fair and reasonable meaning of the word. For nearly forty years the legislature has approved this construction of such grants of power by re-enacting them in substantially the same form and in some instances by making special provision for obtaining the benefits of patents. The authority of that case in this respect has not been contradicted. In *Kilvington v. Superior*, 83 Wis. 222, 53 N. W. 487, urged by respondents, the decision in no wise conflicts with the earlier case. It proceeds upon and gives effect to a distinction fully recognized in *Dean v. Charlton*, namely, that such general city powers as lighting streets, purchase of a fire engine, or destruction of garbage are generally and broadly conferred by other clauses of our city charters, and that as to them the requirement that purchases of materials or letting of work be done upon competitive bidding is merely regulative of a

duty which the city government is bound to perform; and,. as a result, that the legislature must be deemed not to have intended the requirement for competitive bidding to apply where it could not.    The field is one of construction of our own statutes enacted after the rule of *Dean v. Charlton* was announced, so that views of courts in other jurisdictions upon their statutes are by no means controlling if even relevant. For *Milwaukee,* however, the legislature, evidently recogniz-- ing the rule of *Dean v. Charlton* -as established generally, proceeded to provide a method of obtaining privileges under patents entirely consistent with all provisions elsewhere in the charter for competitive bidding.    Without doubt that legislation was intended to exclude any other method of ac-- quiring for the city the advantages of patented rights, arti-- cles, or processes for any purpose. ˊ *Ricketson v. Milwaukee,* 105 Wis. 591, 81 N. W. 864.    That statute (sec. 23, ch. V, of present charter) provides:    ˎ

"The said board shall have power, under the authority of the common council, to make a contract or contracts with the patentee or his licensees or assigns, to use any patent or patented article, process, combination, or work for the said city, at a stipulated sum or royalty for the use thereof.    And thereupon the said board shall have power to order any work, whether chargeable to the said city or to lots, parts of lots,. or parcels of land therein, to be done with the use of such patent or patented article, process, combination, or work; and whenever the owner or agent of any lot, part of lot, or parcel of land in said city, or other person authorized by law to do such work, shall do the same and use any such patent or patented article, process, combination, or work in doing the same, he shall pay to the said city the sum or royalty charge- able therefor; or the amount of such sum or royalty may be charged as a special assessment upon the respective lots, parts. of lots, and parcels of land in front of which such patent was so used, and collected for the use of said city, as other special taxes are collected."

This enactment. clearly intends, while permitting the city to acquire the right to use patented articles or processes by

purchase of such right, to require approval of the council for such purchase, and, of course, that the subject shall have been so submitted for consideration by the council that no reasonable doubt that they have consciously and intentionally given the authority can arise. It is certainly debatable whether submission of the question of paving Jackson street with a "bitulithic pavement" as if there were several kinds which might be in competition, and a resolution merely in the affirmative, can be construed as an authority to the board of public works to contract for the privilege of laying "Warren's bitulithic pavement" covered by a patent. It is at least open to argument that the purpose of the board to make such contract was so obscured, if not concealed, that the subject may not have been purposely passed on by the council; especially in view of the prohibition imposed on the board by ch. 107, Laws of 1903, that no special brand of asphalt shall be required by name to be furnished in any specifications for street paving. We, however, need not decide this question, for it is also clear that sec. 23, ch. V, was enacted as a part of the whole charter and to enable the making of improvements in the manner and according to the scheme prescribed, although but for that section such other requirements would be inconsistent with a patented article or process. One essential of the scheme for paving streets at the abutters' expense is competitive bidding, and it is clear that sec. 23, ch. V, does not intend to dispense with that. It nowhere authorizes the contract for the work to be made with the person who, by reason of his patent, can exclude all other bidders, nor does it anywhere authorize imposition by special assessment of anything but the "royalty" which the city may pay by reason of the noncompetitive contract for the use of the patent authorized by that section, in addition to the cost of the work ascertained by competition under the other provisions of the charter. Obviously the legislative purpose contemplated, as to such work, the acquisition of a

right to operate under the patent for a royalty and then, and only then, the letting of the actual work to the lowest bidder. Does the offer made by the patentee constitute any such contract, even conceding that the board of public works has so accepted that offer as to close a contract and that the council has authorized such action? It seems to us to come very far from it; indeed to disclose a studied attempt to evade the purpose of the charter so as to confer upon the patentee a contract for a large part of the work to be done without even the formality of any bidding therefor. It is to be noticed that nearly two thirds of the whole cost of the paving, viz., $1.40 out of $2.25, is to go to the patentee, and for that price it agrees to supply the crushed stone for the upper two inches of the pavement, to do the work at *Milwaukee* of sorting, coating, and mixing this stone with hot asphalt hour by hour as the work proceeds, to supply and prepare for laying the flushing coat in the same way, to furnish the stone chips for the final surface, and to hire an advisory expert for the progress of the work. Can the $1.40 per yard of pavement thus to be paid the patentee in any reasonable sense be termed "royalty" which, by the terms of sec. 23, ch. V, the city may include in, or add to, the special assessment, or does such work, in large part, fall within the "use of a patent, or patented article, process," etc., for which alone the city is so authorized to contract? Any such contention would be absurd. The bulk of the patentee's agreement is for doing the paving. If such a division of the work of an improvement can be dictated by the patentee, where must he stop in absorbing into his noncompetitive contract other parts of that work? May he not insist that crushed stone and cement for the six inches of concrete be purchased from him at his own price, or that his teams and rollers shall be employed to do the work, or that he alone perform still other parts of the work till the supposed competitive bidder is reduced to a mere name? If patentee may absorb two thirds of the work

and price, we see no very logical stopping place short of complete nullification of the right of the lotowner to have competitive bidding, which, of course, is a valuable right, theoretically at least tending to lessen the cost. Indeed, under the terms of this proposal from Warren Bros. Company the city seems not to acquire the right to "use" the patent or process. The only offer on that subject is that the successful bidder, not the city, shall have the right to use the patents so far as necessary in laying the pavement. It is difficult to discover that this would confer any right on the city to use patent, process, or combination; and yet it probably must use them from time to time as the pavement may require resurfacing or other repair with the patented materials. These considerations lead us to the conclusion that no contract such as is authorized by sec. 23, ch. V, was made with the patentee or its assigns, hence that no jurisdiction was acquired to order, or contract for, the doing of the work involving the use of the patent, hence that the attempted contract with defendant *Central Bitulithic Paving Co.* was void.

Concluding, as we must, therefore, that no valid contract was ever made for doing this work, and that the invalidity was of a character highly likely to prejudice the plaintiff in manner and degree not readily separable from the burdens which might lawfully be imposed upon him, we must hold that the court should have enjoined the proceedings at once. When it is clear as matter of law that there can be but one result of a litigation, and that an act will be void if done, but harmful to the plaintiff meanwhile, the court should interpose to maintain the *status quo. Beaser v. Ashland,* 89 Wis. 28, 61 N. W. 77; *Liebermann v. Milwaukee,* 89 Wis. 336, 61 N. W. 1112; *Boyd v. Milwaukee,* 92 Wis. 456, 66 N. W. 603. Plaintiff's right is entirely free from the obstacle found in *State ex rel. Schintgen v. La Crosse,* 101 Wis. 208, 77 N. W. 167; *State ex rel. Hallauer v. Gosnell,* 116 Wis. 606, 93 N. W. 542; and *Beaser v. Barber A.*

*P. Co.* 120 Wis. 599, 98 N. W. 525, and many other cases, where the plaintiff stood by and allowed contractor to incur expense of a work without a warning, for here due promptness was exercised in notifying defendants of plaintiff's claim, both as taxpayer and lotowner, that the contractor could receive no pay, either in money from the city or in assessments against plaintiff's property, if he persisted in acting under his void contract; this action having been commenced before any work was done.

The reasons already stated which result in the conclusion that the contract attempted to be made by the board of public works was illegal and, therefore, void are supplemented by the provisions of sec. 1770*b*, Stats. 1898. This statute provides that contracts of a foreign corporation which has not complied with the requirements of that section "shall be wholly void on its behalf . . . but shall be enforcible against it." That such enactment is intended to be enforced according to its words was decided in *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 89 N. W. 904. Confessedly, when the contract in question was made, the defendant *Central Bitulithic Paving Co.* had not complied with the conditions of sec. 1770*b*, Stats. 1898. It has, therefore, no legal right to demand, nor is the city under any legal obligation to pay, any money by reason of the contract. The right of a taxpayer to enjoin the payment by city officers of money which the city does not owe is most thoroughly established by a long line of our own decisions, only a few of which need be cited. *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798; *Rice v. Milwaukee,* 100 Wis. 516, 76 N. W. 341; *Mulberger v. Beurhaus,* 102 Wis. 1, 8, 78 N. W. 402; *St. Croix Co. v. Webster,* 111 Wis. 270, 273, 87 N. W. 302; *Kircher v. Pederson,* 117 Wis. 68, 93 N. W. 813.

As the facts were all before the court, and left no reasonable doubt as to the final result, the temporary injunction against payment out of the city treasury of the moneys which

would be due if the contract were valid should not have been dissolved.

*By the Court.*—The order appealed from is reversed, and the cause remanded for further proceedings according to law.

Upon a motion by the respondents for a rehearing there was a brief by *John T. Kelly,* city attorney, and *Carl Runge,* of counsel, for the *City of Milwaukee;* a brief by *Arthur Jones,* counsel for *The Central Bitulithic Paving Company;* and a brief in opposition by *Ryan, Ogden & Bottum,* attorneys for the appellant.

The motion was denied June 21, 1906.