DANIEL R. KENDALL *et al.*

*v.*

NEIL A. FADER.

*Opinion filed October 25, 1902—Rehearing denied December 5, 1902.*

1. MECHANICS' LIENS—*when act of 1895 does not apply.* If a mechanic's lien arises out of a contract entered into prior to the passage of the Mechanic's Lien act of 1895, the latter act does not apply to a proceeding to enforce the lien, and the sufficiency of the statement must be determined by the law as it stood when the contract was entered into.

2. SAME—*sufficiency of statement under section 4 of act of 1887.* Although section 4 of the Mechanic's Lien act, as amended in 1887, requires the statement of a claim for lien to set forth the times when the material was furnished or labor performed, yet if the work is done under an entire contract, the statement is sufficient in that respect if it shows that the work was commenced upon the execution of the contract and completed at a certain date.

3. SAME—*taking notes of owner does not waive lien.* While a mechanic's lien is waived when the claimant takes security either on the property or that of third parties, yet the claimant does not necessarily waive his lien when he takes the note of the owner of the premises.

4. SAME—*when overcharge does not defeat statement of claim for lien.* The fact that the statement of the lump sum due the contractor is larger than the amount allowed by the decree does not defeat the lien, where there was no wrong intention on the part of the contractor and no one is prejudiced, and especially where the item of overcharge is easily separable from the rest of the debt.

5. SAME—*attorney's fee not allowable under act of 1887.* If a mechanic's lien arises out of a contract entered into prior to the passage of the act of 1895, which provides for an allowance of attorney's fees in mechanic's lien cases, it is improper to allow such fee in a proceeding to enforce the lien, since the act of 1887, which governs, has no provision therefor.

6. The court reviews the evidence in this case, and holds that the contractor's lien was not waived by the fact that some of the sub-contractors had taken the owner's notes for their claims, the amounts of which were included in the contractor's statement, and that a declaration of trust had been made by the trustees named in a deed of trust, executed upon the property, in favor of some of such sub-contractors.

*Kendall* v. *Fader*, 99 Ill. App. 104, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

The original bill in this case was filed on November 21, 1896, by the Tacoma Safety Deposit Company against Charles F. Stewart, Sarah Anna Stewart, Harry W. Christian, trustee, and George P. Law, successor in trust, James H. Christian and Mary J. Christian, his wife, Neil A. Fader, and others, to foreclose, upon certain property lying west of Vincennes avenue in Cook county, a trust deed, dated March 14, 1895, and recorded in the recorder's office of Cook county on May 3, 1895, executed by Charles F. Stewart and wife, to secure a note of same date for $750.00, signed by Charles F. Stewart, due one year after date, to the order of himself, and by him endorsed to the Tacoma Safety Deposit Company, which note was transferred by Harry W. Christian to said company to secure an indebtedness to said company. The bill so filed alleged that said trust deed was made subject to two prior trust deeds, one to William Loeb, dated February 1, 1895, and recorded February 4, 1895, to secure $4000.00, and the other of same date to said Loeb to secure $500.00. Charles F. Stewart and wife filed an answer to the original bill of the Tacoma Safety Deposit Company. Neil A. Fader also filed an answer calling for strict proof. Fader also on January 18, 1897, filed a cross-bill, setting up that, on October 25, 1894, he contracted with Charles F. Stewart to build a house on said premises for $3395.00; that said house was built and completed about November 20, 1895; that there was unpaid to Fader under said contract the sum of $1188.42, being the amount at that time found to be due said Fader upon an accounting then had between him and Stewart; that, on January 30, 1896, Fader filed in the circuit court of Cook county a claim for lien, verified, consisting of statement of contract, etc.; that

demand had been made upon Stewart for payment of said
sum of $1188.42, which had not been paid. The Tacoma
Safety Deposit Company answered the cross-bill of Fa-
der, neither admitting nor denying the same, but calling
for strict proof. The appellants Daniel R. Kendall and
Virginia B. Rogers, as trustees of the estate of John L.
Rogers, deceased, and owners of the note for $4000.00
above referred to, entered their appearance and filed an
answer to Fader's cross-bill, alleging that, on February
1, 1895, Charles F. Stewart was indebted to them in the
sum of $4000.00 for money loaned to him, and made his
note of that date for $4000.00, payable five years after
date, with interest at six per cent evidenced by interest
coupon notes, each for the sum of $120.00, payable one
every six months after date; that all of said notes were
endorsed by Stewart and delivered to Kendall and Rog-
ers, as trustees as aforesaid, the owners thereof; and
that, to secure the payment thereof, Stewart and wife
executed the deed of trust above referred to, conveying
said premises to William Loeb, as trustee; and alleg-
ing that said trust deed is a first and valid lien upon the
premises, and prior to the alleged lien of Fader. Rep-
lications were filed to the answers, and the cause was
referred to a master in chancery, who made his report.
Objections and exceptions were filed to the master's re-
port by appellants and by Charles F. Stewart.

On June 28, 1900, the cause came on to be heard upon
exceptions to the master's report. It had been claimed
by Stewart, the owner of the property, in his answer,
that the building was not constructed in accordance with
the plans and specifications, and that he was damaged
thereby to the amount of about $1000.00. Fader claimed
to have performed his contract, and a large amount of
testimony was introduced upon this subject. The master
allowed, for damages and loss for failure to follow the
specifications, the sum of $145.45, but in other respects
found for the lien claimants. In its decree the circuit

court confirmed the master's report, except that it increased the amount allowed for damages and loss to $245.45.

The decree, so entered, found that the material allegations in Fader's cross-bill were true, and that, on October 25, 1894, Charles F. Stewart was the owner of the premises in controvery; that Fader erected a building thereon at 4313 Vernon avenue; that it was completed November 20, 1895; that Stewart then took possession; that, on January 30, 1896, Fader filed with the clerk of the circuit court a statement of claim for mechanic's lien; that said statement contained a statement of the balance due Fader from Stewart, after allowing all credits, of $1188.42; that said statement was filed in due season and complied with the statute; that the amount due Fader, including $60.90 for extras furnished with the consent of Stewart, amounted to $3455.90; that Stewart was entitled to a credit of $2375.70, leaving a balance due Fader of $1080.20; that there was due on the same interest at five per cent, making a total of principal and interest of $1315.45; that Fader was entitled to recover a reasonable sum on account of solicitor's fees; that ten per cent was such reasonable sum, amounting to $131.54; making a total due Fader of $1446.99; that Fader was entitled to a first lien on said premises for said sum of $1446.99; that appellants were the owners of said note for $4000.00 and the said interest notes thereon and the trust deed securing the same, and that there was due them the sum of $4918.28; that appellants had a lien on said premises subject only to the lien of Fader; that the Tacoma Safety Deposit Company was the holder of said note for $750.00 and the trust deed securing the same, and that there was due to it thereupon $922.36, and that the lien of the trust deed of said company was subject to those of Fader and of appellants. After making the findings above named the decree decreed that Fader had a first lien for $1446.90; that appellants had a second lien for $4918.28; that the

Tacoma Safety Deposit Company had a third lien for
$922.36; and the decree ordered that Stewart pay the
respective parties the sums due them within three days,
and, upon default, that the master sell the premises.

From the decree, so entered by the circuit court, the
present appellants, as trustees as aforesaid, prayed an
appeal to the Appellate Court, which was allowed. The
Branch Appellate Court, to which the appeal was taken,
affirmed the decree of the circuit court, except that the
solicitor's fee of $131.54, allowed by that decree, was
disallowed.

BURLEY & MCSURELY, for appellants:

The form of the statement of claim is governed by
the law in force when the contract is made. *Andrews* v.
*Atwood,* 167 Ill. 249; *Culver* v. *Atwood,* 170 id. 432; *Weber* v.
*Bushnell,* 171 id. 594; *Stone* v. *Tyler,* 173 id. 154; *Mantonya*
v. *Reilly,* 184 id. 183; *Young* v. *Jones,* 180 id. 216.

The form of the statement in question is controlled
by the law of 1887, which requires that the statement of
claim set forth "the times when the material was fur-
nished or labor performed." The statement of claim in
question does not do this.

The taking of a note or notes secured by a deed of
trust will operate as a waiver or discharge of the statu-
tory lien. *Brady* v. *Anderson,* 24 Ill. 111; *Kinzey* v. *Thomas,*
28 id. 502; *Gardner* v. *Hall,* 29 id. 277; *Croskey* v. *Corey,*
48 id. 442; *Clement* v. *Newton,* 78 id. 427; *Lyon Lumber Co.* v.
*Loan Co.* 174 id. 31; *Kankakee Coal Co.* v. *Crane Bros. Manf.
Co.* 138 id. 207.

Where, by express agreement between the parties,
the taking of security is not to amount to a waiver of
lien, to bind an encumbrancer it must appear that he is
a party to said agreement and consents thereto. *Lyon
Lumber Co.* v. *Loan Co.* 174 Ill. 31.

Where a statement of claim is for a single lump sum,
but which, from the evidence, is shown to include sums

which the claimant cannot recover as a lien, and which sums are so included in the lump sum as to be indistinguishable and inseparable, thereby misleading encumbrancers and others dealing with the land, such statement is insufficient and invalid. *Adler* v. *Exposition Co.* 126 Ill. 373; *Crosby* v. *Loop*, 14 id. 330.

FRANCIS T. MURPHY, and THADDEUS S. ALLEE, for appellee:

It was unnecessary under the act of 1887, where the contract was entire, to itemize the account in the statement of claim. *Springer* v. *Kroeschell*, 161 Ill. 358; *Hayes* v. *Hammond*, 162 id. 133; *Moore* v. *Parish*, 163 id. 93; *Grace* v. *Building Ass.* 166 id. 637; *Ehden* v. *Murphy*, 170 id. 402; Farson on Illinois Lien Law, 208.

The lien attaches from date of contract. *Franklin* v. *Taylor*, 131 Ill. 376; *Clark* v. *Moore*, 64 id. 273; *Springer* v. *Kroeschell*, 161 id. 366; *Paddock* v. *Stout*, 121 id. 571; *Hickox* v. *Greenwood*, 94 id. 266; *Thielman* v. *Carr*, 75 id. 385; *Dawson* v. *Black*, 148 id. 489; Starr & Cur. Stat. chap. 82, sec. 1.

Certainty to a common intent is all that is required in stating a mechanic's lien claim. *Springer* v. *Kroeschell*, 161 Ill. 358; *Grace* v. *Building Ass.* 166 id. 643.

The theory of the statute is beneficent, and will receive at the hands of the courts a liberal construction as to contracts which plainly come within its terms, so as to give effect to its spirit and purpose. 2 Jones on Liens, sec. 1356; Phillips on Mechanics' Liens, sec. 16; Coleman on Illinois Lien Law, sec. 18; *Davis* v. *Alvord*, 94 U. S. 545; Farson on Illinois Lien Law, sec. 38; *Phillips* v. *Stone*, 25 Ill. 66; *Stout* v. *Sowers*, 22 Ill. App. 65; *Hayes* v. *Hammond*, 162 Ill. 137; *Culver* v. *Schroth*, 153 id. 446.

There are no vested rights in remedies, and the right to at any time alter or change a remedy is entirely with the legislature. The law in force at the time it is sought to enforce rights under a contract is the law which governs in all matters pertaining to the remedy. *Templeton*

v. *Horne,* 82 Ill. 491.; Am. & Eng. Ency. of Law, 504, and notes; *Farmer* v. *People,* 77 Ill. 322; *Smith* v. *Bryan,* 34 id. 376; *Williams* v. *Waldo,* 3 Scam. 264; *Bank* v. *Willard,* 24 Ill. 437; *Wood* v. *Child,* 20 id. 211; *Wood* v. *Soucy,* 166 id. 407; *Bronson* v. *Kinzie,* 1 How. 311; *Stone* v. *Tyler,* 67 Ill. App. 20; *Smith* v. *Bell,* 70 id. 425; *Barton* v. *Steinmitz,* 37 id. 142; *Hughes* v. *Russell,* 43 id. 430; *Weber* v. *Bushnell,* 171 Ill. 549.

The statute makes solicitors' fees a part of the taxable costs of the proceeding, to be taxed against the losing party.   Lien Law of 1895, sec. 18.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

The decree of the circuit court held that Fader, appellee, claiming a mechanic's lien upon the premises in question, was entitled to a first lien thereon for $1080.20, together with interest and attorney's fees; and that appellants, as trustees under the will of John L. Rogers, deceased, were entitled to a second lien by virtue of the trust deed, executed to William Loeb, as trustee, to secure a note for $4000.00, owned by them.   The present appeal is prosecuted by the appellants, as owners of the encumbrance, decreed to be subject to the appellee's mechanic's lien, and the controversy is, therefore, between the mechanic's lien creditor and such encumbrancers, and not between the mechanic's lien creditor and Stewart, the owner of the property.   Appellants claim, that the decree of the circuit court was erroneous in holding that appellee was entitled to a lien prior to the lien of their trust deed.   The decree is alleged by appellants to be erroneous upon two grounds.

*First*—It is contended by appellants that the statement of claim, filed with the clerk of the circuit court by appellee for a mechanic's lien, is indefinite and insufficient.   The statement is thus charged to be defective, upon the alleged ground that it does not sufficiently give or state the time or times of furnishing the labor or ma-

terial.   The statement, so filed, discloses that the contract between appellee and Charles F. Stewart, the owner of the property, for the erection of the building upon the premises in question was in writing, and was dated the 25th day of October, 1894; that the original contract provided for the construction of a block of three stone-front residences on the east side of Vernon avenue, but was amended on February 18, 1895, by providing that only one of the three houses was to be erected thereunder, as the other two houses had been withdrawn by previous agreement.

Work upon the houses under the contract is shown by the proof to have been begun shortly after October 25, 1894.   It follows that the Mechanic's Lien law of 1895, which was passed on June 26, 1895, and by its terms went into effect at once, has no application in the present case. The form of the statement here is controlled by the Mechanic's Lien law of 1874, as amended on May 31, 1887.

The law in force at the time a contract is executed enters into and forms a part of the contract.   Inasmuch as the mechanic's lien in this case arose out of a contract, entered into prior to the passage of the Mechanic's Lien law of 1895, the latter law does not govern the present case.   It has been so held by this court in a number of decisions.   (*Andrews & Johnson Co.* v. *Atwood*, 167 Ill. 249; *Culver* v. *Atwood*, 170 id. 432; *Weber* v. *Bushnell*, 171 id. 587; *Stone* v. *Tyler*, 173 id. 147; *Young* v. *Jones*, 180 id. 216; *Mantonya* v. *Reilly*, 184 id. 183).   In *Culver* v. *Atwood, supra,* it was held that the Mechanic's Lien act of 1895 gives new remedies to parties, furnishing labor or material to subcontractors, and imposes new duties upon owners, and cannot be allowed to control contracts, entered into before its passage, without making it obnoxious to the constitutional provision concerning laws impairing the obligation of contracts.

It being determined, then, that the law of 1887 governs the construction of the present contract and the

statement of claim filed thereunder, it is necessary to refer to the law of 1887, in order to ascertain what its requirements are. Section 4 of the act of 1887 in regard to mechanics' liens provides that "every creditor or contractor, who wishes to avail himself of the provisions of this act, shall file with the clerk of the circuit court of the county, in which the building, erection, or other improvement to be charged with the lien is situated, a just and true statement or account or demand due him, after allowing all credits, setting forth the times when such material was furnished or labor performed, and containing a correct description of the property to be charged with the lien, and verified by an affidavit." (Sess. Laws of 1887, p. 219). It thus appears that, by said section 4, the statement of the claim filed with the clerk must set forth "the times when such material was furnished or labor performed." The contention is that the statement, so filed by appellee, did not set forth the times when the material was furnished or labor performed, as required by section 4. When we turn to the statement in question, it is found to set forth that, by the terms of the original contract dated October 25, 1894, appellee was to build for Stewart a block of three stone-front residences and provide all labor, material, etc., for the same, and that work was to be commenced on or before April 30, 1895; that, on or about February 18, 1895, the parties amended the agreement of October 25, 1894, by providing that only one house (the middle house) was to be erected under the contract, and that "immediately upon the execution of the said contract this claimant proceeded to erect the said building according to the terms thereof, and completed the said building on or about the 20th day of November, 1895." This statement was sufficient, as the labor was done and the materials were furnished under an entire contract. In *Springer* v. *Kroeschell*, 161 Ill. 358, we said (p. 365): "Where the work was done or the materials furnished under an entire contract, the different

times when the work was performed, or the materials furnished, need not be stated. (Phillips on Mechanics' Liens, sec. 359). Certainty to a common intent is all that is required in stating a mechanic's claim, and where the law requires the time when the work was to be done to be set forth, a claim which states, that the work was done between April 16, 1841, and August 29, 1841, is sufficient.—Id. sec. 360." (See also *Hayes* v. *Hammond,* 162 Ill. 133). It sufficiently appears from the statement, that the work was commenced upon the execution of the contract, and that the building was completed on the 20th day of November, 1895.

*Second*—It is furthermore contended by the appellants that some of the sub-contractors, furnishing labor and material for the building under appellee as contractor, took notes secured by a deed of trust upon the property in question; that the taking of these notes, alleged to have been secured by such trust deed, operated as a waiver or discharge of the liens held by such sub-contractors, and that appellee's statement of claim, as filed with the circuit court, was for a single lump sum, to-wit, $1188.42, and that such lump sum included the amounts, for which such notes were taken by the sub-contractors. It is, therefore, argued that, inasmuch as the lump sum, named in the statement, included sums for which appellee or the sub-contractors had no liens, and which were so included as to be indistinguishable and inseparable, thereby misleading encumbrancers and others dealing with the land, the statement was insufficient and invalid.

The proof shows that quite a number of the sub-contractors accepted notes for portions of the amounts due them from Charles F. Stewart, the owner of the property. It is true that a mechanic's lien is waived or discharged where the owner thereof takes security, either on property, or that of individuals not parties to the transaction. (*Brady* v. *Anderson,* 24 Ill. 111; *Kinzey* v. *Thomas,* 28 id. 502; *Gardner* v. *Hall,* 29 id. 277; *Kankakee Coal Co.* v. *Crane Bros.*

*Manf. Co.* 138 id. 207; *Croskey* v. *Corey*, 48 id. 442; *Clark* v. *Moore*, 64 id. 273; *Lyon & Sons Lumber Co.* v. *Equitable Loan and Investment Co.* 174 id. 31). But it is also true that the claimant of a mechanic's lien does not necessarily waive his lien, when he takes the note of the owner of the premises, who incurred the debt. It is said that a note of the owner so taken merely serves to liquidate the demand. (*Van Court* v. *Bushnell*, 21 Ill. 624; *Brady* v. *Anderson*, 24 id. 111; *Meeks* v. *Sims*, 84 id. 422; *Paddock* v. *Stout*, 121 id. 571).

In the case at bar, the notes taken by the sub-contractors were the notes of Stewart, the owner of the premises, and not the notes of any third person or persons. Therefore, the taking of the notes alone would not operate as a waiver or discharge of the liens. Undoubtedly, if the sub-contractors accepted a trust deed to secure the notes of Stewart, the owner, the taking of such trust deed as security would amount to a waiver of their liens. It is not clear, however, from the proof that they accepted the security of such trust deed. The notes in question were executed on July 8, 1895. On that date Stewart and his wife made a conveyance of the property in question to James H. Christian, as trustee, subject to the three trust deeds hereinbefore mentioned, one given to secure $750.00, another to secure $4000.00, and a third to secure $500.00. Subsequently, on September 18, 1895, James H. Christian made a declaration of trust, in which he declared that he held said property, subject to said encumbrances aggregating $5250.00, in trust for certain persons, alleged to have been the sub-contractors above referred to. It does not appear clearly from the evidence, however, that this declaration was actually accepted as security by the sub-contractors. But, whatever may be the fact in regard to this, it is not established by the evidence that the sub-contractors waived their liens by taking the notes in question for the reasons hereinafter stated.

There is no evidence whatever, tending to show that appellee accepted any note, or security for what was due to him as contractor, or that he in any other way waived his lien as a mechanic. There is some proof, tending to show that some of the sub-contractors, accepting these notes, signed a waiver of their rights to liens on the premises in question. It is shown, however, that the sub-contractors were induced to accept the notes, and to sign the waiver in question, upon certain conditions, which were not complied with.

In the first place, there is proof to the effect that some of these notes were signed by Stewart for extra work done by the sub-contractors under contracts made directly between them and Stewart, the owner of the property, and with which the appellee had nothing to do. In the next place, the sum of $4000.00, secured by the trust deed held by the appellants, was loaned for the purpose of erecting the building upon the premises. In other words, the trust deed and the notes secured by it represented a building loan. It became apparent on or about July 8, 1895, that the balance of money to be paid out by the appellants for the construction of the building would not be sufficient to pay off all the liens upon the building, or all the debts due for material and labor furnished thereon. It was accordingly represented to these workmen that, if they would accept notes for a portion of the debts due them, the remainder of the money in the hands of Loeb, the trustee, would at once, or within a few days, be paid out to them in cash, *pro rata,* according to the respective amounts of their claims. This agreement, however, to pay the money to the workmen was not kept, and they never received any money at all. To our minds the evidence is quite clear, that they took the notes for small portions of their claims upon the condition that the balance of the claims was to be paid at once, or within a very short time, in cash. It is also quite clear, that

this condition was not complied with. On the contrary, the proof shows that Loeb, the trustee, paid over the balance of the fund to the present appellants, the holders of the note for $4000.00 and the trust deed securing the same, and not to the sub-contractors.

It is said, however, by counsel for appellants that, even if it were true that, by an arrangement between Stewart, the owner, and these lien claimants, the liens were not to be waived or discharged by the taking of the notes except upon the performance of the condition already stated, yet such agreement between the owner and the sub-contractors would not bind appellants, as encumbrancers, unless it appears that appellants were parties to said agreement, and consented thereto. (*Lyon Lumber Co.* v. *Equitable Loan Co.* 174 Ill. 31). But it is quite apparent from the proofs that appellants knew of said agreement, and assented to the same. The abstract, so far as we have been able to discover, makes no reference to the testimony of Julius Loeb taken in this case. Julius Loeb was a member of the firm of William Loeb & Co., mortgage brokers. His evidence shows that he and William Loeb, the trustee, were agents not only for Stewart, the mortgagor, but for the appellants, the mortgagees. The arrangement, by which the lien claimants were to take these notes, was known to William Loeb and Julius Loeb. They held the money, and paid it out from time to time for the construction of the building upon statements and affidavits submitted to them by the contractor, and upon orders given by the owner. The testimony of Julius Loeb also shows that, when he and his partner discovered from the statements submitted to them that there would not be enough money to pay all the claims, the balance of the money was turned over to the appellants, and not to the claimants who received the notes in question. The amount, stated by appellee to be due in the statement, which he filed with the clerk of the circuit court, included, according to the statements of counsel for ap-

pellants as made in their brief, the sum of $390.49. If the amounts, making up this sum of $390.49, consisted of items which were non-lienable, then, inasmuch as they are not separable on the face of the statement, it may be that their insertion therein would defeat the lien. It has been held that, where the claim is for a single sum, part of which is non-lienable and not distinguishable from the rest on the face of the statement, the entire lien will be defeated. (*Adler* v. *World's Pastime Exposition Co.* 126 Ill. 373; *Culver* v. *Schroth,* 153 id. 437; Phillips on Mechanics' Liens, sec. 356).

There is, however, nothing to show that appellee intended any fraud upon appellants by failing to deduct the amounts, for which notes were so taken by the subcontractors, from the total amount claimed by him to be due. He testifies, that he did not deduct such amounts, because he never received any credit for them from the sub-contractors. In view of the fact that the condition, upon which the notes were signed, was never fulfilled, appellee did not consider that the sub-contractors had waived their rights in the matter. In fact he was sued by several of these parties, who had taken notes from Stewart, the owner of the property, and was obliged to pay their claims. In view of what has been said, we are not able to say that the lower courts have not decided correctly in holding that the claim filed by the appellee was a true statement of the amount due him after allowing all proper credits. It is true, that the statement of the lump sum, claimed to be due, was somewhat larger in amount than the amount which was allowed to the appellee by the decree of the circuit court; but upon this subject we agree with the following statement made by the Appellate Court in their opinion, deciding this case: "It does not appear but that appellee believed and still believes himself entitled to a lien for the whole amount, so claimed to be due, except that, as to one item of $10.00, he admits that he failed to make a proper credit, but

such a mistake, and the fact that the court upon the hearing disagreed with him as to another item of $60.00 for which in good faith he claimed a lien, do not necessarily constitute such a violation of the requirements of such statement, as to make it invalid. Where there is no wrong intention, and where no party is thereby prejudiced, and especially where the item is easily separable from the residue of the indebtedness, the mistake is said in *Culver* v. *Schroth*, 153 Ill. 437-446, not to be sufficient of itself to vitiate the statement and defeat the lien."

*Third*—Appellee assigns a cross-error, alleging that the Appellate Court erred in disallowing the solicitor's fee, which was embraced in the amount found to be due by the circuit court. There was no error in this action of the Appellate Court. The Mechanic's Lien law of 1874, as amended in 1887, made no provision for the allowance of an attorney's fee. Section 18 of the Lien law of 1895, already referred to, authorizes an attorney's fee to be taxed as part of the costs in favor of the claimant. (Sess. Laws of Ill. of 1895, p. 233). But, as has already been stated, the act of 1895 has no application to the case at bar. The circuit court decreed that appellee was entitled to a first lien upon the premises for the amount of the solicitor's fee in question, and thereby made a contract for the parties, which they did not make for themselves. The Mechanic's Lien law of 1874, as amended in 1887, entered into and formed a part of the contract under consideration, and inasmuch as that act provided for no lien for solicitor's fees, such lien could not be given by a statute subsequently enacted. It is true that remedies, which the law provides to enforce contracts, constitute no part of the contracts themselves, and are within the control of the legislature. (*Smith* v. *Bryan*, 34 Ill. 364; *Templeton* v. *Horne*, 82 id. 491; *Woods* v. *Soucy*, 166 id. 407). Here, however, the allowance of such lien for an attorney's fee, when it was not authorized by the act in force when the contract was made, would not be an extension of appel-

lee's remedy, but would be a charge of an additional encumbrance upon the property for his benefit. We agree with the Appellate Court that the allowance of the fee was improper.

Upon a consideration of the whole case, we are of the opinion that the judgment of the Appellate Court is correct. Accordingly, that judgment is affirmed.

*Judgment affirmed*