NATURAL CARBON PAINT CO. et al. v. FRED BREDEL CO.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1911.)

No. 1,724.

1. CORPORATIONS (§ 642*)—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE —CONSTRUCTION OF STATUTES.

The general rule in the interpretation of state statutes imposing conditions on the doing of business in the state by foreign corporations is that they are to be construed as applicable alone to the carrying on of a permanent business, and not to the making and performance of a single contract for a customer, without general engagement in business within the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. § 642.*

Foreign corporations doing business in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke-Collender Co., 72 C. C. A. 622.]

2. CORPORATIONS (§ 672*)—FOREIGN CORPORATIONS—ACTIONS BY—DEFENSES.

That a contract sued on by a foreign corporation is invalid because of the failure of plaintiff to comply with the statutory requirements to entitle it to do business in the state is a matter of defense which must be pleaded by defendant; the presumption being in favor of its legality.

[Ed. Note.— For other cases, see Corporations, Cent. Dig. §§ 2645–2649; Dec. Dig. § 672.*]

3. MECHANICS' LIENS (§ 2*)—LAW GOVERNING—LAW OF ILLINOIS.

Under the law of Illinois as settled by decision, the mechanic's lien law in force at the time a contract is made enters into and forms a part of the contract and governs in respect to the requirements to secure the lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 2, 49, 89; Dec. Dig. § 2.*]

4. MECHANICS' LIENS (§ 157*)—SUFFICIENCY OF STATEMENT—ILLINOIS STATUTE.

A lien statement filed by a contractor held not to comply with the requirements of the Illinois mechanic's lien statute of June 26, 1895 (Laws 1895, p. 225 [Hurd's Rev. St. 1901, c. 82, §§ 15, 20, 21]), with sufficient strictness to entitle the contractor to a lien as against a mortgagee, but sufficient as against a purchaser of the property pending a suit for foreclosure which had no greater rights than the original owner.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 268–274; Dec. Dig. § 157.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

193 F.—57

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Fred Bredel Company against the Natural Carbon By-Products Company and the American Trust & Savings Bank, with the Natural Carbon Paint Company as intervening defendant. Decree for complainant, and the Paint Company and the Bank appeal. Affirmed as to the Paint Company, and reversed as to the Bank.

This appeal is from a decree of foreclosure of a mechanic's lien in favor of Fred Bredel Company, a Wisconsin corporation, under a contract made by the Natural Carbon By-Products Company, an Illinois corporation, on June 11, 1903, for materials furnished and work and labor performed in and about the erection of a plant upon real estate in Freeport, Ill., owned by the Natural Carbon By-Products Company. The Natural Carbon By-Products Company was adjudicated bankrupt pending the suit, and the appellant Natural Carbon Paint Company became a purchaser of the property under the bankruptcy proceedings, and became a party defendant through intervention in the foreclosure suit. The appellant American Trust & Savings Bank was made a party defendant as mortgagee of the Natural Carbon By-Products Company under a trust deed made August 1, 1904. The original bill was filed June 26, 1906, and no answer was filed on behalf of the Natural Carbon By-Products Company. The appellants filed answers to the bill and filed cross-bills, respectively, and upon issues joined under all the pleadings and testimony taken thereunder the cause was heard and resulted in the decree appealed from.

Defrees, Buckingham, Ritter & Campbell, Joseph Defrees, George T. Buckingham, Henry A. Ritter, John G. Campbell, and Marquis Eaton (Cyrus Heren, of counsel), for appellant American Trust & Savings Bank.

Stearns & Zipf, James H. Stearns, and Oscar R. Zipf, for appellant Natural Carbon Paint Co.

E. H. Bottum and Charles E. Monroe, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The appellants' numerous assignments of error are rightly treated by counsel and submitted in both arguments as embraced under three general propositions for reversal of the decree against them which awards and forecloses a mechanic's lien in favor of the appellee, namely: (1) For alleged failure on the part of appellee, as a foreign corporation, to comply with the statute of Illinois in reference thereto; (2) for insufficiency of the claim or statement of lien as filed to authorize recovery; and (3) for insufficiency of the proof to establish performance of the alleged contract in suit. All facts involved under the issues raised by the bill and answers and by the cross-bills, upon which the hearing proceeded, are specifically found and determined by the trial court; and it is uncontroverted that such findings in reference to performance of the contracts in suit are supported by testimony. No tenable ground appears for disturbance of such findings of fact, and their sufficiency for support of the decree is unquestionable, unless one or the other of the two first-mentioned contentions is upheld. These first and second propositions, therefore, present the only assignments requiring further consideration.

1. The question discussed in the arguments whether the appellee's contract in suit is within the meaning of the Illinois statute cited in reference to foreign corporations transacting business in the state— Act May 26, 1897 (Laws 1897, p. 174), as amended by Act April 22, 1899 (Laws 1899, p. 118) pars. 52, 53, and 54, c. 32, 4 Starr & Curtis Ann. Stat. Jones & A. Supp.—may not be free from difficulty under the authorities, were solution required. Its provisions, in so far as material, are:

Section 1 (par. 52):

"Every corporation for pecuniary profit formed in any other state, territory or country, before it shall be authorized or permitted to transact business in this state, or to continue business therein. if already established, shall designate some person as its agent or representative in this state on whom service of legal process may be had if desired: shall have and maintain a public office or place in this state for the transaction of its business, and where proper books shall be kept to enable such corporation to comply with the constitutional and statutory provisions governing such corporation; and such corporation shall be subjected to all liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this state, and shall have no other or greater powers. * * *"

Section 2 (par. 53):

"Every company incorporated for purposes of gain under the laws of any other state, territory or country, now or hereafter doing business within this state, shall file in the office of the Secretary of State a copy of its charter or articles of incorporation, or in case such company is incorporated merely by a certificate, then a copy of its certificate of incorporation. * * * Upon a compliance with the above provisions by said corporation, the Secretary of State shall give a certificate that said corporation has duly complied with the laws of this state, and is authorized to do business therein. * * *"

Section 3 (par. 54):

"Every foreign corporation amenable to the provisions of this act which shall neglect or fail to comply with the conditions of the same as herein provided shall be subject to a fine of not less than $1,000.00. to be recovered before any court of competent jurisdiction; and it is hereby made the duty of the Secretary of State, as he may be advised that corporations are doing business in contravention of this act, to report the fact to the prosecuting attorney of the county in which such corporation is doing business, and the prosecuting attorney shall, as soon thereafter as is practicable, institute proceedings to recover the fine herein provided for, and his compensation therefor shall be 10 per cent. of the amount recovered, the remainder to be paid into the revenue fund of the state; in addition to which penalty, on and after going into effect of this act no foreign corporation as above defined which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this state upon any demand, whether arising out of contract or tort."

[1] We understand the general rule to be settled in the interpretation of like statutory provisions that the inhibition is to be construed as applicable alone to the carrying on of a permanent business in the state, and not to the making and performance of a single contract for a customer, without general engagement in business within the state. Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727, 732, 734, 5 Sup. Ct. 739, 28 L. Ed. 1137; Oakland Sugar Mill Co. v. Fred W. Wolf Co., 118 Fed. 239, 243, 55 C. C. A. 93; Ammons v. Brunswick-

Balke-Collender Co., 141 Fed. 570, 573, 72 C. C. A. 614. The appellants contend, however, that the present statute is otherwise construed by the Supreme Court of the state in United Lead Co. v. Elevator Manf. Co., 222 Ill. 199, 201, 78 N. E. 567, and that such decision is conclusive, both of the applicability of the statute to the transaction in suit and of invalidity of the contract thereunder. The decision referred to arose under a statement of facts certified from the Appellate Court, which shows the plaintiff to be "a New Jersey corporation, doing business in" Illinois without compliance with the statute, and objection to the suit was set up by plea, so that the above-mentioned doctrine does not appear to have been involved for decision, nor is it mentioned in the opinion; and no rule or decision under the statute is brought to our attention which makes it applicable to the contract in suit.

[2] Whatever may be the import of this statute, however, we believe no issue was raised by the pleadings under which the trial proceeded for impeachment of the contract in suit. In the answers of all defendants, respectively, except the appellant mortgagee, and in their cross-bills as well, the contract is expressly averred as entered into between the parties thereto, in Wisconsin, as alleged in the bill, and the validity of the contract and of the alleged transactions in performance thereof stands admitted thereunder. The answer of the mortgagee American Trust & Savings Bank "leaves the complainant to its proof thereof," stating that it "neither admits nor denies" that the contract was entered into as alleged. It does appear of record that the appellants made application for leave to file amended answers, setting up noncompliance on the part of appellee, as a foreign corporation, with the statute referred to, and thus challenging the validity of the contract and transaction in performance thereof; that such application was made after the taking of proofs and preparation for final hearing under the issues as made up; that it was denied by the trial court, with remark "that the proposed defense was unconscionable"; and that depositions were taken and tendered on behalf of the appellants, in support of the averments of fact contained in the proposed amendments, and the trial court "refused to receive such depositions in evidence." But, if amendments were needful to interpose this harsh defense, denial thereof at such stage of the litigation was plainly within the exercise of judicial discretion. So that the assignments of error must rest on the proposition for which the appellants contend, that the jurisdictional averment of the bill of foreign incorporation presented the (assumed) statutory requirement, and the burden rested with the appellee to allege and prove compliance therewith.

For and against this contention authorities are cited from various states having analogous statutory provisions which are in conflicting lines of theory and rule of pleading thereunder. In Illinois the question does not appear to have arisen directly in any cases called to our attention, and those which are cited indicate the practice to be uniform to set up noncompliance as a defense in an answer or plea. The one line proceeds upon the doctrine of presumptive right action,

whereby corporate authority to make and perform the contract is presumed and thus includes the presumption of compliance with these statutory requirements (6 Thomp. Corp. § 7965), so that neither averment nor proof thereof is needful for the prima facie case; while the other line either rejects or ignores applicability of this presumption in favor of the foreign corporation, treating the statutory requirements as conditions precedent, and that compliance therewith must be averred and proven to authorize the suit (19 Cyc. 1318c). We believe the rule of the first-mentioned line—exemplified in Sprague v. Cutter & Savidge Lumber Co., 106 Ind. 242, 6 N. E. 335; Nickels v. People's B. L. & S. Assn.. 93 Va. 380, 25 S. E. 8; Langworthy v. Garding, 74 Minn. 325, 77 N. W. 207; Friedenwald Co. v. Warren, 195 Mass. 432, 81 N. E. 207—to be well founded, in conformity with settled general principles of pleading and practice and that the presumption there recognized and applied is unaffected by the terms of this Illinois statute. The objection to the decree, resting on the alleged statutory requirements for execution of the contract, is therefore overruled.

2. The claim of lien on which the decree rests was filed May 8, 1905, and reads as follows:

"Fred Bredel Co., a corporation organized under the laws of Wisconsin, by Fred Bredel, its president and general manager, states that on the 11th day of June. A. D. 1903, the said Fred Bredel Co. entered into a written contract or agreement with the Natural Carbon By-Products Company, a corporation under the laws of South Dakota, licensed under the laws of the state of Illinois and doing business at Freeport, Illinois, in and by which said contract or agreement the said Fred Bredel Co. was to provide the material, to make, construct, install, furnish and deliver at Freeport, Illinois, upon the real estate of the said Natural Carbon By-Products Company described as follows, to wit: Block number twenty (20) and lot number fourteen (14) in block number nineteen (19) in Turner's North addition to the city of Freeport, in Stephenson county and state of Illinois, for the sum of fourteen thousand and seven hundred dollars ($14,700), upon foundations and in buildings to be constructed by said Natural Carbon By-Products Company, a bench of nine retorts and other apparatus for the carbonizing of shale, the product to be used in the manufacture of paint, guaranteed to carbonize at least a ton and a half of shale per retort or 13½ tons per bench per twenty-four hours—so constructed as to become attached to said real estate as a part thereof; the payments under said contract to be made as follows: The sum of five-hundred dollars ($500) upon the signing of the contract; one thousand dollars ($1000) upon the presentation by said first party of a bill of lading showing shipment of one carload of material to be used in said construction; the remaining payments to be made on the first day of each calendar month thereafter on the basis of 75% of the contract price of the work done and material furnished during the previous calendar month; the said two payments of $500 and $1000 to apply as payment of such 75% until the same should be exhausted; the final payment, or 25% of the contract price, to be paid within thirty (30) days after the installation of said apparatus and after the same should be ready for firing.

"It was further stipulated in said contract that trying and testing the apparatus should be done at the expense of said second party under the supervision of the first party, and that the same should be tried and tested for at least twenty-four hours.

"That said Fred Bredel Co. furnished the material and rendered the services in said contract mentioned and duly completed said contract according to the terms thereof on the 14th day of February, A. D. 1905; that in addition to furnishing the material and rendering the services pursuant to the terms of said contract said Fred Bredel Co. furnished extra material and

rendered extra services in and about said real estate to the value of two thousand eighty-six and $72/100$ dollars ($2086.72) which was completed on the 14th day of February, A. D. 1905; that there is now due the said Fred Bredel Co. from the said Natural Carbon By-Products Company on account of the furnishing of the material and rendering the services and completing said contract and for extra material and extra services, after allowing all just credits, deductions and set-offs, the sum of four thousand two hundred sixty-six and $10/100$ dollars ($4266.10) and that this statement is made for the purpose of securing the lien of the said Fred Bredel Co. upon the real estate pursuant to the provisions of the statute of the state of Illinois in such case made and provided.

"Fred Bredel Co., by Fred Bredel,
"President and General Manager."

The claim purports to be verified under oath, and so certified by the hand and seal of a Wisconsin notary public.

It is both obvious and conceded that this statement or claim of lien was framed to conform to the provisions of the mechanic's lien law of Illinois, approved May 18, 1903, which became operative by its terms July 1, 1903. See Hurd's R. S. 1905, c. 82, pp. 1317–1328. Error is assigned for want of compliance with the act of June 26, 1895, which was in force at the date of the contract in question; and the question whether the last-mentioned act governs the issues becomes material in view of its various provisions.

[3] We believe the Illinois authorities to be uniform and controlling, under these statutes, that the existing act of 1895 must govern the requirements to establish the lien under the conceded date of the contract, June 11, 1903. Andrews & Johnson Co. v. Atwood, 167 Ill. 249, 47 N. E. 387; Stone v. Tyler, 173 Ill. 147, 155, 50 N. E. 688; Kendall v. Fader, 199 Ill. 294, 301, 65 N. E. 318; Springer v. Bowerman, 75 Ill. App. 352; Treloar v. Hamilton, 225 Ill. 102, 105, 80 N. E. 75; Eisendrath v. Gebhardt, 222 Ill. 113, 114, 78 N. E. 22; Bloomington Hotel Company v. Garthwait, 227 Ill. 613, 625, 81 N. E. 714.

In the first five above-mentioned cases the rule was declared in reference to the act of 1874, in effect, that the mechanic's lien law in force at the time a contract is executed enters into and forms a part of the contract, and thus governs in respect of the requirements for the lien (see Kendall v. Fader, 199 Ill. 294, 301, 65 N. E. 318), and the last-mentioned cases uphold like rule under the act of 1895.

The appellee contends that Turney v. Saunders, 4 Scam. (Ill.) 527, 532, and Templeton v. Horne, 82 Ill. 491, state the rule otherwise, and leave the question open for an independent construction by this court. These earlier authorities, however, arose under earlier statutes, and are plainly inapplicable to the statute and rule in question, and furnish no support for departure from the rule above stated.

The following provisions of the act of 1895 (Laws 1895, p. 225 [Hurd's Rev. St. 1901, c. 82, §§ 15, 20, 21]) are therefore applicable to the case at bar:

"Section 1. * * * This lien shall attach as of the date of the contract, but as against or to the prejudice of any other creditor, incumbrancer or purchaser without actual or constructive notice of such contract, the lien shall not attach as of the date of the contract unless within 30 days thereafter the contractor shall file in the office of the clerk of the circuit court

of the county * * * a statement giving his name and the name of the owner of the property, what his contract is for, the amount to be paid, a description of the property, and the date when delivery of material or work is to be completed. If such statement is not filed within the 30 days named the lien shall attach from the date the same is filed. Provided that commencement of the work or delivery of material at the premises by any contractor shall serve the same purpose as the filing of such statement or commencement of work by all parties who may subsequently furnish or specially prepare material for or perform services of (or) labor in the construction of the improvement."

"Sec. 6. If the work is done, or materials are furnished under an oral contract no lien shall be had by virtue of this act unless the work shall be done or materials furnished within one year from the date of the contract and final payment therefor is to be made within such time. If the contract be written no lien shall be had by virtue of this act if the time stipulated for the completion of the work or furnishing materials is beyond three years from the date of the contract or the time of payment beyond one year from the time stipulated for the completion thereof. Nor shall a lien be had under a written contract where the time of completion or final payment is more than one year from the date of the contract unless either the work be continued up to the date of such payment or within 30 days after the completion the contractor shall file in the office of the circuit clerk of the county where the improvement is made a statement under oath, or verified by affidavit, giving the name of the contractor and of the person contracting with him, a description of the property improved, the balance due, and the date for the final payment, which statement shall have the effect and stand in lieu of the claim for lien hereinafter provided for.

"Sec. 7. No contractor shall be allowed to enforce such lien as against or to the prejudice of any other creditor, or incumbrancer, or purchaser, unless within 4 months after the last payment shall have become due and payable according to the terms of the original contract, he shall either bring suit to enforce his lien therefor, or shall file with the clerk of the circuit court of the county * * * a claim for lien, verified by the affidavit of himself, agent or employé, which shall consist of a brief statement of the contract, the date the same was made, the date fixed therein or the time implied for completion and for final payment, and the date that the same was completed, if completed, the balance due after allowing all credits, and a sufficiently correct description of the lot, lots or tracts of land to pass the title thereof by deed of conveyance. An itemized account shall not be necessary, except for extras, where the contract is for all of the work or materials, or all of a specific part thereof at a fixed and agreed price. Such claim for lien may be filed at any time after the contract is made, and as to the owner my be amended at any time before trial or on the hearing of a suit to enforce the lien, subject to a continuance on account of such amendment in the discretion of the court. No such lien shall be defeated to the proper amount thereof because of an error or overcharge on the part of any person claiming a lien therefor under this act unless it shall be shown that such error or overcharge was made with intent to defraud."

Under these lien provisions, the rule is well settled (Williams v. Rittenhouse & Embree Co., 198 Ill. 602, 611, 64 N. E. 995, 998, and cases cited) that strict compliance is required for enforcement against third parties—that "the lien is in derogation of the common law, is opposed to common right, and cannot be given except when authorized by the provisions of the statute strictly construed"—and it is unquestionable that several of the statutory requirements are not satisfied by the foregoing lien statement. It does not contain a "brief statement of the contract" in its essential features as shown by the evidence, nor specify "the date fixed therein or the time implied for completion and for final payment," as expressly required by section 7;

nor does it present an itemized account of the extras claimed, as intended by the statute. Christian v. Allee, 104 Ill. App. 177, 188. Moreover, while the statement specifies a written contract within section 6, "when the time of completion or final payment is more than one year from the date of the contract," no facts are stated to meet the requirements of that section for establishing a lien.

[4] The present decree against the appellant American Trust & Savings Bank, as mortgagee, rests on this insufficient lien statement and cannot be upheld, although the contract in evidence (as found) would otherwise appear to authorize a lien. As against the appellant Natural Carbon Paint Company, however, we believe these defects in the statement filed for the lien do not require reversal of the decree, for the following reasons: (a) That such appellant intervened as purchaser of the property pendente lite, and thus stands in no better position than that of the original owner in the suit; (b) that irrespective of the question whether the statement is made material for enforcement of the lien as against the owner, the statute expressly authorizes its amendment "as to the owner"; and (c) that all needful facts otherwise are established by the evidence, as to contract terms, performance, and extras, together with timely filing of the lien claim. Thus, without formal amendment of the statement as filed, it may justly be treated as amended through the undisputed proofs.

While the foreclosure decree as entered against the American Trust & Savings Bank, mortgagee, must be reversed for the above-mentioned insufficiency of the lien claim, as filed, to establish priority for the mechanic's lien over the mortgage lien, it is unquestionable under the evidence that the appellee is entitled to equitable relief in one form or another in reference to this mortgage. These facts appear: (1) That the mortgage security embraces, not only the property subject to the appellee's lien, but other property owned or held by the mortgagor; and (2) that the amount of the indebtedness outstanding, secured by the mortgage, was originally much less than the amount named therein, and a large portion of the bonds have since been retired and canceled. The appellee contends that the residue outstanding amounts to less than $13,000; that the above-mentioned mortgaged property not embraced under its lien furnishes ample security for such residue; that certain of the mortgage bonds were issued and held to provide funds for payment of construction expenses, including the appellee's work and claim; and that the decree should equitably provide for sale of the property upon which its lien attached for payment thereof, free from such mortgage lien, even though the mortgage may otherwise be entitled to priority. It does not appear, however, that either of these propositions of fact or law was brought to the attention of the trial court, nor that issue was joined or tendered upon either of these alleged facts; and such of the facts as do appear in the record, either in reference to the property included in the mortgage, the circumstances attending the issues of bonds and their retirements, or the amount thereof outstanding, are plainly not directed to the present contention, nor sufficient, without other circumstances in evidence, for determination of the equities between the

lien claimants. Undoubtedly the outstanding amount of the mortgage indebtedness must be ascertained and adjudicated for the purpose of the foreclosure; and both the fact of other property embraced in the mortgage and the value thereof must be ascertained to define the equities of the parties for and upon such foreclosure sale as may be decreed under the pleadings. So the cause must be remanded for further proceedings accordingly.

On the appeal of Natural Carbon Paint Company, the decree of the Circuit Court is affirmed. On the appeal of American Trust & Savings Bank the decree is reversed, and the cause is remanded for further proceedings in conformity with this opinion. The costs of this appeal are divided, requiring the appellee to pay one half thereof and the appellant National Carbon Paint Company the other half.