### LOOMIS v. PEOPLE'S CONST. CO. et al.

#### (Circuit Court of Appeals, Sixth Circuit. March 3, 1914.)

#### No. 2407.

1. COMMERCE (§ 46*)—FOREIGN CORPORATIONS—RIGHT TO DO BUSINESS—CONDITIONS.

 It is competent for a state to prescribe the conditions on which a foreign corporation may enter and do business therein, provided its action does not interfere with or restrain the free exercise of interstate or foreign commerce.

 [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 100, 113, 126; Dec. Dig. § 46.*]

2. CORPORATIONS (§ 642*)—FOREIGN CORPORATIONS—REGULATION—STATUTES.

 Statutes requiring a corporation to maintain an office within the state for the transaction of business are generally held not to relate to isolated transactions.

 [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. § 642.*]

3. COURTS (§ 366*)—FEDERAL COURTS—STATE STATUTES—RULES OF DECISION.

 The Supreme Court of Wisconsin having held that St. 1913, Wis., § 1770b, providing that every contract made by or on behalf of any foreign corporation affecting its personal liability before it shall have complied with the provisions of the act specifying the terms on which it might do business within the state, should be wholly void, was applicable to single transactions, such construction would be followed in the federal courts.

 [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

 State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

4. COMMERCE (§ 46*)—INTERSTATE COMMERCE—CONTRACT—CONSTRUCTION.

 Defendant construction company having been awarded a contract for the building of a sewer in J., Wis., contracted with defendant pipe com-

pany, a West Virginia corporation, having its central office in Michigan, whereby the pipe company was to manufacture concrete sewer pipe, furnishing the superintendent, also all the forms, steel reinforcements, saddle, etc., the construction company furnishing the cement and gravel and the labor necessary to make the pipe on the ground where it was to be used. The pipe company's forms, derrick, and saddle, together with the reinforcing material, was shipped to J. from outside the state. *Held*, that the contract was not a transaction of interstate commerce, and, the pipe company never having complied with the Wisconsin law regulating the transaction of business in that state by foreign corporations, the contract was void and unenforceable for the benefit of the company or its assignee, under Wisconsin Stats. § 1770b, providing that every contract made by or on behalf of any such corporation affecting its personal liability, or relating to property within the state before it has complied with the requirements prescribed for doing business within the state, shall be wholly void on its behalf and on behalf of its assigns.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 100, 113, 126; Dec. Dig. § 46.*]

In Error to the District Court of the United States for the Eastern District of Michigan; Alexis C. Angell, Judge.

Action by Peter B. Loomis against the People's Construction Company and the Title Guaranty & Trust Company. Judgment for defendants, and plaintiff brings error. Affirmed.

G. A. Miller, of Detroit, Mich., and Miner & Reece (Alex. J. Groesbeck, of Detroit, Mich., of counsel), for plaintiff in error.

L. W. Goodenough, of Detroit, Mich. (Wilson & Cobb, of Jackson, Mich., of counsel), for defendants in error.

Before KNAPPEN and DENISON, Circuit Judges, and COCHRAN, District Judge.

KNAPPEN, Circuit Judge. In the year 1908, the People's Construction Company, an Iowa corporation (which we shall hereafter call the Construction Company), was awarded the contract for certain sewer construction in the city of Janesville, Wis. Following the award, the Reinforced Concrete Pipe Company (hereafter called the Pipe Company), a West Virginia corporation, having its "central office" at Jackson, Mich., entered into a written agreement (made at Janesville) with the Construction Company for the manufacture for the latter company of upwards of 10,000 lineal feet of reinforced concrete pipe of different sizes, at an aggregate price of more than $11,000; the Pipe Company furnishing all the forms required for the construction, the steel reinforcement (which was both longitudinal and lateral), the derrick for lowering the pipe into the trench, and a saddle (presumably for use in so lowering the pipe), as well as the superintendent; the Construction Company furnishing the cement and gravel required for the concrete, as well as the labor required in making the pipe, which was to be manufactured in Janesville "along the line of sewer construction of said city"; the Pipe Company agreeing to use in the manufacture of the concrete given proportions of specified cement and gravel, and to reinforce the same "in keeping with the standard of reinforcement in use by" the Pipe Company; also to provide openings

for house and catch basin connections as "shown by the plans of said sewer construction." The Pipe Company had thus nothing to do with opening or filling the trenches or with laying the pipe therein, aside from furnishing the derrick and saddle therefor; and the Construction Company had nothing to do with the actual manufacture of the pipe itself previous to putting it into the trench except furnishing the labor, cement, and gravel, and perhaps the mixer. The pipe joint was patented, and the contract price was apparently intended to cover any royalty charge. The Pipe Company's forms, derrick, and saddle were, for the purposes of this work, shipped to Janesville from outside the state; the reinforcing material was shipped to Janesville from Chicago. The pipe manufacture continued from August to November. The Pipe Company had no office or general place of business in Wisconsin; whether it had an actual factory anywhere does not appear. To secure the performance of the contract between the city and the Construction Company, the latter gave a bond to the city with the Title Guaranty & Surety Company (a Pennsylvania corporation) as surety, conditioned, among other things, to "pay for all work and labor performed and materials furnished to complete" the sewer construction.

The Wisconsin statute (section 1770b) provides that:

"No corporation, incorporated or organized otherwise than under the laws of this state * * * shall transact business or acquire, hold, or dispose of property in this state until such corporation shall have caused to be filed in the office of the Secretary of State a copy of its charter, articles of association or incorporation"

—the officer named being made the corporation's attorney for the service of process. Failure to comply with the statute makes the corporation and those acting for it in the state liable to fine. It further provides that:

"Every contract made by or on behalf of any such foreign corporation, affecting the personal liability thereof or relating to property within this state, before it shall have complied with the provisions of this section, shall be wholly void on its behalf and on behalf of its assigns, but shall be enforceable against it or them."

A fee of $25, with an added percentage on capital employed in the state above a stated amount, is required. The Pipe Company never complied with this statute. The Construction Company paid the Pipe Company about $4,800 under the contract, failing to make further payments by reason of certain claims not important here. The Pipe Company assigned its right of action to the plaintiff, who brought suit upon the contract in a state court of Michigan, against the Construction Company and the Surety Company, on the theory that the bond inured to the benefit of the Pipe Company, as a furnisher of labor and materials for a public work. The suit was removed to the United States Circuit Court by reason of diversity of citizenship of the parties. The Construction Company was not served with process, and did not appear; the Surety Company defended. At the conclusion of the trial the court directed verdict for defendant, upon the grounds, first, that the action, if it lay at all, must be brought in the name of the city of Janesville; second, that the Pipe Company was not a material-

man or laborer, but was a subcontractor; and, third, that the Pipe Company had not qualified itself to transact business in Wisconsin.

[1] Turning to the last-stated ground of the trial court's action: It was entirely competent for the state to prescribe the terms upon which a foreign corporation might enter and do business in the state, provided its action did not directly restrain or interfere with the free exercise of interstate or foreign commerce. Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 732, 5 Sup. Ct. 739, 28 L. Ed. 1137; New York State v. Roberts, 171 U. S. 658, 665, 19 Sup. Ct. 58, 43 L. Ed. 323; Oakland Sugar Mill Co. v. Fred W. Wolf Co. (C. C. A. 6th Cir.) 118 Fed. 239, 244, 55 C. C. A. 93. Of course, a statute imposing such restraint would be void, and, whether or not so intended, could not be made to effect such restraint.

[2] The question then arises whether what was done by the Pipe Company amounted to a transacting of business within the state of Wisconsin, or whether its contract sought to be enforced here was one "affecting the personal liability" of that company, within the meaning of the Wisconsin statute. Statutes requiring a foreign corporation to maintain an office within the state for the transaction of business have been generally held not to relate to isolated transactions such as the one in question is said to be. Cooper Mfg. Co. v. Ferguson, supra; Natural Carbon Paint Co. v. Fred Bredel Co. (C. C. A. 7th Cir.) 193 Fed. 897, 114 C. C. A. 111. But see Chattanooga Bldg. & Loan Ass'n v. Denson, 189 U. S. 408, 414, 23 Sup. Ct. 630, 47 L. Ed. 870.

[3] But the Wisconsin statute makes no requirement of the maintaining of office within the state; and it has been expressly held by the Supreme Court of that state, not only that the act in question does not relieve foreign corporations not having a portion of their capital invested in Wisconsin from complying with the act, if such corporations actually transact business within the state or make contracts therein upon which they assume a personal liability (Southwestern Slate Co. v. Stephens, 139 Wis. 616, 626, 120 N. W. 408, 29 L. R. A. [N. S.] 92, 131 Am. St. Rep. 1074), but that "a single contract falls within the ban of the statute." Southwestern Slate Co. v. Stephens, supra; citing Allen v. Milwaukee, 128 Wis. 678, 106 N. W. 1099, 5 L. R. A. (N. S.) 680, 116 Am. St. Rep. 54, 8 Ann. Cas. 392. The case of Southwestern Slate Co. v. Stephens was an action by a foreign corporation to collect a stock subscription under contract made in Wisconsin. The corporation had offices in at least two other states; it does not appear by the opinion that it had an office in Wisconsin, or that it was doing business there except the sale of the stock. It was said (139 Wis., page 623, 120 N. W., page 410, 29 L. R. A. [N. S.] 92, 13 Am. St. Rep. 1074):

"The trial court found as matter of fact that the subscription contract was made in Wisconsin, and that it affected the personal liability of the plaintiff. If there is sufficient evidence in the record to sustain this finding, the judgment must be affirmed. This result must follow regardless of whether the plaintiff was or was not transacting business in this state within the meaning of subdivision 2; § 1, of the 1905 law."

This construction of the statute so made by the highest court of Wisconsin will be respected by the federal courts. See Chattanooga Bldg. & Loan Ass'n v. Denson, supra. The contract on which the suit is here brought was made in Wisconsin, and it is clear that it affected the personal liability of the Pipe Company. The case is thus brought directly within the decision last cited.

[4] Was the transaction in question one of interstate commerce? Had the contract been merely for the manufacture of the pipe in Michigan and its shipment to and delivery in Wisconsin, a transaction in interstate commerce would have been presented. Robbins v. Shelby Co. Taxing District, 120 U. S. 489, 494, 7 Sup. Ct. 592, 30 L. Ed. 694; Crenshaw v. Arkansas, 227 U. S. 389, 33 Sup. Ct. 294, 57 L. Ed. 565, and cases there cited; Coweta Fertilizer Co. v. Brown (C. C. A. 6th Cir.) 163 Fed. 162, 168, 89 C. C. A. 612. And again, had the contract involved merely a manufacture out of the state and an installation in Wisconsin, the transaction, under many authorities, would still be held one in interstate commerce. See Haughton Elevator Co. v. Candy Co., 156 Mich. 25, 27, 120 N. W. 18; Imperial Curtain Co. v. Jacob, 163 Mich. 72, 76, 127 N. W. 772; Buffalo Refrig. Mach. Co. v. Penn Heat & Power Co. (C. C. A. 3d Cir.) 178 Fed. 696, 102 C. C. A. 196. But neither of the features stated exists here. The dominant feature of the transaction is its local character. The contract relates to the manufacture of the sewer pipe in Wisconsin, and in that state alone. In this respect it does not differ materially from the contract taken by the Construction Company. The mere fact that the forms, derrick, and saddle were shipped in from without the state does not overcome the force of the local and determinative character of the transaction. The following cases, among others, support this conclusion, some of them emphasizing the distinction we have expressed. Haughton Elevator Co. v. Candy Co., supra; Imperial Curtain Co. v. Jacob, supra; Independent Tug Line v. L. S. Lumber & Box Co., 146 Wis. 121, 131 N. W. 408; Buffalo Refrig. Mach. Co. v. Penn Heat & Power Co., supra. See, also, Diamond Glue Co. v. United States Glue Co., 187 U. S. 611, 616, 23 Sup. Ct. 206, 47 L. Ed. 328.

We are thus brought to the question whether the statute makes the contract before us absolutely void, or whether it merely imposes some other penalty for failure to comply with it. Had it merely forbidden suit in the state courts, or merely imposed the liability of the corporation and its officers to penalties, without in terms declaring the contract void, it should be held that such prohibition or penalty was regarded by the Legislature as ample to effect the legislative object; and in such case the statute would create no impediment to suit in the courts of other states or in the federal courts. Cooper v. Ferguson, supra; Fritts v. Palmer, 132 U. S. 282, 289, 10 Sup. Ct. 93, 33 L. Ed. 317; Allen v. Alleghany County, 196 U. S. 458, 462, 25 Sup. Ct. 311, 49 L. Ed. 551; David Lupton's Sons v. Automobile Club of America, 225 U. S. 489, 496, 32 Sup. Ct. 711, 56 L. Ed. 1177, and cases cited; Johnson v. New York Breweries Co., Ltd. (C. C. A. 2) 178 Fed. 513, 101 C. C. A. 639. And had the statute imposed both the prohibition and penalty referred to, perhaps the result above stated would equally follow. But if the

statute has expressly declared the contract void, such invalidity must, in our opinion, be recognized by the courts, state and federal, in whatever state suit may be brought for its enforcement. See Harris v. Runnels, 12 How. 79, 83, 13 L. Ed. 901, and notes; Alleghany County v. Allen, 69 N. J. Law, 270, 274, 55 Atl. 724; Johnson v. New York Breweries Co., Ltd., supra; Blodgett v. Lanyon Zinc Co. (C. C. A. 8th Cir.) 120 Fed. 893, 896, 58 C. C. A. 79; Dunlop v. Mercer (C. C. A. 8th Cir.) 156 Fed. 545, 554, 86 C. C. A. 435; Thomas v. Birmingham Ry., Lt. & P. Co. (D. C.) 195 Fed. 340, 342.

The statute provides that contracts of a foreign corporation which has not complied with the requirements of the section "shall be wholly void on its behalf and on behalf of its assigns, but shall be enforceable against it or them." The Supreme Court of the state has construed the statute as making absolutely void all contracts made by foreign corporations affecting their liability, or relating to property within the state, before compliance with the statute (Ashland Lumber Co. v. Detroit Salt Co., 114 Wis. 66, 76, 89 N. W. 904; Allen v. Milwaukee, 128 Wis. 678, 687, 106 N. W. 1099, 5 L. R. A. [N. S.] 680, 116 Am. St. Rep. 54, 8 Ann. Cas. 392); and this court is bound by that construction, which also has been recognized and applied by the Supreme Court of the United States in Diamond Glue Co. v. United States Glue Co., supra. True the Supreme Court of the State, in Lanz-Owen & Co. v. Garage Equipment Co., 151 Wis. 555, 139 N. W. 393, decided since the contract in question was made (and, indeed, since the decision of this case below), has said of contracts made before compliance with the statute that they are not "absolutely void," but are "void only at the election of the party dealing with the corporation," but that decision again affirms that such contracts are "wholly void on its [the foreign corporation's] behalf and on behalf of its assigns," and that "neither the corporation nor its assigns could enforce it against the other party." We think the expressions contained in this later opinion do not, so far as respects the instant case, change the rule before announced by that court. Indeed the right of the opposite party to enforce the contract was expressly written in the statute when previously construed by the Wisconsin decisions, as well as in Diamond Glue Co. v. U. S. Glue Co. The basis of plaintiff's asserted right of action is, and must be, the contract between the Pipe Company and the Construction Company. The latter has not affirmed the contract; it is not in court; there is no limitation of time within which it must elect whether or not to enforce; and the Surety Company, if pursued, has, we think, as a party in interest, the right to assert the void nature of the contract as against the Construction Company. Hanna v. Kelsey Realty Co., 145 Wis. 276, 282, 129 N. W. 1080, 33 L. R. A. (N. S.) 355, 140 Am. St. Rep. 1075; Lanz-Owen & Co. v. Garage Equipment Co., supra.

It results from these views that verdict was properly directed for defendants. This conclusion makes it unnecessary to consider the other grounds upon which the action of the trial court is based; and we accordingly intimate no opinion thereon.

The judgment of the district court is affirmed, with costs.